UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JACK LOVERDE,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>    Defendant. | Case No. 14-cv-00529-NJV<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 22 & 27 |

## INTRODUCTION

Plaintiff, Jack Loverde, seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Loverde's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 6 & 15). The court therefore may decide the parties' cross-motions for summary judgment. For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF RELEVANT EVIDENCE

Loverde was fifty-three years of age at the time of the alleged onset date of March 27, 2010. Loverde had completed two years of college and was self-employed for several years as a real estate appraiser. In April 2010, Loverde reported to his treating physician, Dr. Saglimbeni, that he has recently injured his back performing yard work. Dr. Saglimbeni prescribed physical therapy. Following visits in May and June of 2010, Dr. Saglimbeni again prescribed physical therapy.

In August of 2010, treating physician, Dr. Chung, began treating Loverde for back pain. Upon examination, Dr. Chung found, among other things, a positive straight leg raising test on the right. Dr. Chung diagnosed a strain/sprain of the lumbar spine and a displaced disc and ordered an MRI of the lumbar. In May 2011, Dr. Chung completed a summary report regarding Loverde's back condition. Dr. Chung opined that Loverde: (1) suffered a reduced range of lumbar-spine flexion, an abnormal gait, muscle spasms, and tenderness; (2) had pain with prolonged sitting or standing; and (3) took anti-inflammatory medication that occasionally caused abdominal pain and discomfort. Dr. Chung referred Loverde to a neurosurgeon.

Neurosurgeon Dr. Lifshutz examined Loverde in February 2012, and found reflex loss and motor weakness, and recommended surgery. However, Dr. Lifshutz stated that he wanted to update his recommendation of surgery pending further MRI studies, but the record does not reflect any updates.

In December 2010, Dr. Van Kirk performed a consultative examination on behalf of the Agency. He diagnosed chronic musculoligamentous strain/sprain associated with degenerative disk disease and spinal stenosis. He opined, among other things, that Loverde could sit for six hours per workday, stand and/or walk for six hours per workday, lift and carry ten pounds frequently, and lift and carry twenty pounds occasionally. Further, he opined that Loverde's "symptoms are enhanced with cold weather" and that he "should not be required to work in a cold and/or damp environment."

In January 2011, non-examining state-agency physician Dr. Nasrabadi determined at the initial level of administrative adjudication that Loverde could perform a limited range of "light" work. *See* 20 C.F.R. § 404.1568(b) (2014) (defining "light" work). Dr. Nasrabadi, relying in part on Dr. Van Kirk's opinion that cold and damp weather aggravated Loverde's pain, determined that Loverde should avoid concentrated exposure to extreme cold. In March 2011, non-examining state-agency physician Dr. Fast affirmed Dr. Nasrabadi's determination at the reconsideration level.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*Id*. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*Id*. § 416.920). "[T]he ALJ

3

has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *See* AR. 26-30.

At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Loverde had not engaged in substantial gainful activity since his alleged onset date. AR. 26.

At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that loverde suffered the following severe impairment: lumbar degenerative disc disease involving headaches. AR. 26.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Loverde did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR. 27. Next, the ALJ determined that Loverde retained the RFC "to perform light work" with several physical and environmental limitations. AR. 27.

At Step Four, the ALJ determined that Loverde was capable of performing his past relevant work as a real estate appraiser. AR. 29. Accordingly, without proceeding to Step 5, the ALJ found that Loverde had "not been under a disability, as defined in the Social Security Act, from March 2010, through the date of th[e] decision." AR. 30.

## ISSUESS PRESENTED

Plaintiff presents seven issues for this court's review of the ALJ's decision: (1) "[w]hat are the bases for the ALJ's step-four decision"; (2) whether "substantial evidence support[s] the ALJ's as-actually-performed step four findings"; (3) whether "substantial evidence support[s] the ALJ's as-generally-performed step-four findings"; (4) whether "substantial evidence support[s] the ALJ's determination of Loverde's environmental limitations"; (5) whether "substantial evidence support[s] the ALJ's finding that surgery was not indicated for Loverde's back condition"; (6) whether "substantial evidence support[s] the ALJ's evaluation of some of treating physician Dr. Chung's opinions"; and (7) whether "substantial evidence support[s] the ALJ's credibility finding." Pl.'s Mot. Doc. 22 at 8.

## DISCUSSION

As stated above, following the sequential evaluation process, after making a Step Three determination, the ALJ formulates the RFC and then applies that RFC to her Step Four analysis. The challenge raised by Loverde in his fourth issue (whether "substantial evidence support[s] the ALJ's determination of Loverde's environmental limitations") is a challenge to the formulation of the RFC. This challenge, in terms of the sequential process, precedes Loverde's other challenges. As is discussed *supra*, the court finds reversible error at this point in the sequential process, and determines that a remand for further proceedings is appropriate. Accordingly, the court will discuss Loverde's fourth challenge and decline to reach the merits of his other challenges.

In the fourth challenge, Loverde alleges that the ALJ erred in formulating the portion of the RFC related to environmental limitations. Those environmental limitations were that Loverde

5

"must avoid concentrated exposure to extreme cold and wet." AR. 27. In making the RFC determination, the ALJ briefly discussed the opinion of consulting treating physician Dr. Lifshutz, then rejected the opinion of treating physician Dr. Chung and instead gave "great weight to the assessments by the consultative examiner and assessment by the agency consultant." AR. 29. Thus, the medical opinions upon which the ALJ relied in making his RFC determination were both of agency doctors. The ALJ provided no further information regarding the basis for her RFC findings.

Loverde asserts error where the agency's consultative examiner, Dr. Van Kirk, opined that because Loverde's "symptoms are enhanced with cold weather, he should not be required to work in a cold and/or damp environment," (AR. 197), while the RFC precludes "concentrated exposure to extreme cold and wet." Dr. Van Kirk's opinion then, is more restrictive than the limitations of the RFC. The Commissioner acknowledges that the ALJ's RFC determination is not consistent with Dr. Van Kirk's opinion, and offers the court rationales as to why the ALJ might have rejected it. As the ALJ herself never articulated any rejection of the opinion, and instead only expresses that the opinion is given great weight, the Commissioner offers multiple theories as to why the opinion was rejected including: (1) Dr. Van Kirk simply relied on Loverde's symptom allegations in formulating his opinion; (2) the ALJ properly found Loverde's symptom allegations less than credible; (3) and the ALJ properly relied on the opinion of Dr. Nasrabadi, the agency consultant, who found that Loverde should avoid *concentrated* exposure to extreme cold and wetness. *See* Cross Mot. (Doc. 27) at 5.

The Commissioner's invitation for speculation is fraught with entanglements. The Commissioner insists that "there is no question that Dr. Van Kirk's environmental limitations were based solely on Plaintiff's allegations." *Id*. This assertion is belied by the record. Dr. Van Kirk performed a physical examination of Loverde and the doctor does not express within his opinion that his findings regarding environmental limitations is based solely on Loverde's

6

allegations. While it is true that Dr. Van Kirk noted Loverde's compliant of an enhancement of pain in cold weather, there is nothing in the report to indicate that Loverde alleged an enhancement of pain when damp. Thus, Dr. Van Kirk's opinion went beyond Loverde's allegations, which indicates that Dr. Van Kirk relied on something more than merely Loverde's allegations in formulating the opinion. Indeed, the record reflects that Dr. Van Kirk relied on Loverde's allegations, a physical exam, a review of Dr. Chung's records, and an MRI study. *See* AR. 193-97. The court finds the Commissioner's suggestion that Dr. Van Kirk solely relied on Loverde's subjective complaints to be contradicted by the evidence of record and Dr. Van Kirk's opinion.

In addition, the Commissioner's argument that these environmental limitations were rejected as part of the ALJ's rejection of Loverde's subjective allegations of pain is unavailing. The only portion of the ALJ's brief decision in which she provides explanation of her credibility determination makes no mention of the environmental limitations.

Furthermore, the Commissioner's suggestion that the ALJ's rejection of Dr. Van Kirk's opinion was properly made through reliance on Dr. Nasrabadi's opinion is also troublesome. "[T]he conclusion of a nonexamining expert is generally entitled to less weight than the conclusion of an examining physician." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also* 20 C.F.R. § 416.927(d)(1). In order for the ALJ to have deviated from that general rule of medical opinion hierarchy, she must have specifically articulated legitimate reasons for the rejection of Dr. Van Kirk's opinion in favor of Dr. Nasrabadi's opinion. *See Wray v. Shalala*, 56 F.3d 75 (9th Cir. 1995) ("the ALJ may reject the examining expert's opinion in favor of a nonexamining expert's opinion even though the latter opinion is not based on independent clinical findings when he gives specific and legitimate reasons for doing so based on substantial evidence in the record as a whole."). No such articulation occurred in this case and accordingly, the court finds reversible error.

Next, the court must determine whether a remand for an award of benefits or for further proceedings is appropriate. Loverde requests the court apply the "credit-as-true" rule and award full benefits. The credit-as-true rule, where the court takes the evidence as true, is applied when a plaintiff meets "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, Loverde is not able to meet the three part standard. The error occurred during the formulation of the RFC portion of the sequential process. Following the formulation of the RFC the ALJ continues to Step Four to determine whether the claimant can perform past relevant work. In this case, the Commissioner confessed error as to the ALJ's Step Four determination that Loverde could perform past relevant work as a real estate appraiser "as he actually performed it." *See* Cross Mot. (Doc. 27) at 3. However, if the court were to credit-as-true Dr. Van Vick's opinion that Loverde could not be exposed to damp and cold, the ALJ would have to first resolve the question of whether Loverde could perform his past relevant work "as generally" performed, presenting a new hypothetical question to the VE. Then, even if Loverde could show that he could not perform his past relevant work, the ALJ would continue to Step Five to determine whether there are other jobs within the national economy that Loverde can perform. This would require further consultation with the VE. Thus, the court concludes that further administrative proceedings would serve a useful purpose. Accordingly, the court finds that Loverde does not meet the requirements of the credit-as-true standard and a remand for further proceedings are appropriate.

**CONCLUSION**

For the reasons stated above, the court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's motion for summary judgment. The court hereby REMANDS this matter for further proceedings in accordance with this Order.

A separate judgment will issue.

**IT IS SO ORDERED**.

Dated: March 18, 2015

_____
NANDOR J. VADAS
United States Magistrate Judge